FILED

MAR 2 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  JASON A. GELLER  State Bar #168149
   JOHN S. HONG  State Bar #255150
2  LONG & LEVIT LLP
   465 California Street, Suite 500
3  San Francisco, CA  94104
   TEL: (415) 397-2222  FAX: (415) 397-6392
4
   jgeller@longlevit.com
5  jhong@longlevit.com

6  Attorneys for Defendants
   EPITOMICS, INC., a Delaware Corporation, and
7  DR. GUO-LIANG YU, an individual

E-filing

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

BZ

10               SAN FRANCISCO DIVISION

11  ROCCO R. RADUAZO,                          CASE **08**                **1550**

12                         Plaintiff,          **NOTICE AND PETITION FOR REMOVAL**
                                               **OF ACTION UNDER 28 U.S.C. § 1441(b)**
13            vs.

14  EPITOMICS, INC., a Delaware
    corporation, DR. GUO-LIANG YU, an
15  individual, and DOES 1-20,

16                         Defendants.

17

18              TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19              PLEASE TAKE NOTICE THAT defendants Epitomics, Inc. and Dr. Guo-Liang

20  Yu (collectively "Defendants") hereby remove to this Court the state court action described

21  below:

22              1.      On February 14, 2008, an action was commenced against Defendants in the

23  Superior Court of the State of California, in and for the County of San Mateo, entitled *Rocco R.*

24  *Raduazo v. Epitomics, Inc. and Dr. Guo-Liang Yu*, Case No. CV 470200.  A copy of the state

25  court complaint is attached hereto as Exhibit A.

26              2.      Plaintiff Rocco Raduazo ("Plaintiff") served Defendants with the summons

27  and complaint on February 27, 2008.  Prior to February 27, 2008, there had been no formal

28  service of the summons or complaint.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

NOTICE AND PETITION OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY)  Case No.

1           3.     In accordance with the requirements of 28 U.S.C. § 1446, this Notice of

2  Removal is filed within thirty (30) days after formal service of the state court summons and

3  complaint.

4           4.     Jurisdiction – Pursuant to Civil L.R. 3-5(a), this is an action of a civil

5  nature, in which there exists a diversity of citizenship between Plaintiff and Defendants:

6  Defendants are informed and believe, and on that basis allege that Plaintiff is now, and was at the

7  commencement of this litigation, a citizen of the State of Massachusetts. For example, shortly

8  before the commencement of this action, Plaintiff filed a charge with the California Department

9  of Fair Employment and Housing in which he stated that he was a resident of Massachusetts.

10           Defendant Epitomics, Inc. is now, and was at the commencement of this

11  action, a corporation organized and existing under the laws of the State of Delaware with its

12  principal place of business in San Mateo, California. Defendant Yu is now, and was at the

13  commencement of this action, a resident of the State of California.

14

15           5.     Jurisdiction – Pursuant to the requirements set forth in Civil L.R. 3-5(a).

16  this Court has original jurisdiction under 28 U.S.C. § 1441(b) over this civil action between

17  citizens of different states with a matter in controversy that exceeds the sum of $75,000, exclusive

18  of interest and costs: as set forth in the "Damages" Section of the Complaint, Plaintiff alleges he

19  has sustained actual injury in excess of $1,000,000.

20           6.     Jurisdiction - Pursuant to Civil L.R. 3-5(a), this is an action of a civil

21  nature of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may

22  be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §1441(b) in that

23  it arises under 35 U.S.C. §271, regarding patent infringement.

24           7.     Pursuant to 28 U.S.C. § 84(a), the United States District Court for the

25  Northern District of California embraces the Superior Court of the State of California, County of

26  San Mateo, where the action is currently pending, and thus this Court is a proper venue for the

27  action.

28           8.     Intradistrict Assignment – Pursuant to Civil L.R. 3-5(b), Defendants are

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

NOTICE AND PETITION OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY)    Case No.

1   informed and believe that this action "arose" within the meaning of Civil L.R. 3-2(c) in the

2   County of San Mateo, making the San Francisco Division a proper division for assignment of this

3   case.

4        9.    The original complaint purports to state claims against unnamed, fictitious

5   defendants identified as "DOES 1-50." For purposes of this removal, the citizenship of

6   defendants sued under fictitious names is disregarded. 28 U.S.C. § 1441(a).

7        10.   Attached hereto as Exhibit B are true copies of all other pleadings, orders,

8   and other papers served on the removing Defendants by Plaintiff and/or the state court in the state

9   action.

10        11.   Written notice of the filing of this Petition will be served to Plaintiff as

11   required by law.

12        12.   A true copy of this Petition will be filed with the Clerk of the Superior

13   Court of the State of California, County of San Mateo, as provided by law.

14        WHEREFORE, Petitioners EPITOMICS, INC. and DR. GUO-LIANG YU pray

15   that this action be removed to this Court, and that this Court accept jurisdiction of this action, and

16   henceforth that this action be placed on the docket of this Court for further proceedings, the same

17   as though this action had originally been instituted in this Court.

18   Dated: March 20, 2008            LONG & LEVIT LLP

19

20

21                 By

22                 Jason N. Geller

23                 John S. Hong
              Attorneys for Defendants
              EPITOMICS, INC. and DR. GUO-
              LIANG YU

24

25   DOCS\S5787-032\546354.V1

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

3

NOTICE AND PETITION OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY)    Case No.

**SUM-100**

# SUMMONS
## *(CITACIÓN JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
1) EPITOMICS, INC., a Delaware Corporation;
2) DR. GUO-LIANG YU, an individual; and
3) DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROCCO R. RADUAZO

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

FEB 14 2008

Clerk of the Superior Court
By _____ G. Jackson
**DEPUTY CLERK**

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT SAN MATEO COUNTY
SOUTH BRANCH: HALL OF JUSTICE AND RECORDS
400 COUNTY CENTER, REDWOOD CITY, CA 94063

CASE NUMBER: *(Número del Caso):* **CIV 470200**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
WALTER CRANDALL
21382 PINETREE LANE, HUNTINGTON BEACH, CA 92646
(714) 721-5433

DATE: *(Fecha)* FEB 14 2008   JOHN C. FITTON   Clerk, by **GEORGE JACKSON** , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. www.USCourtForms.com

1  Walter Crandall (State Bar No. 250976)

2  21382 Pinetree Lane

3  Huntington Beach, CA 92646

4  Telephone: (714) 721 – 5433

5  E-mail: kiff.crandall@gmail.com

6

7

8  Attorney for Plaintiff: Rocco R. Raduazo

**ENDORSED FILED**
**SAN MATEO COUNTY**

FEB 1 4 2008

Clerk of the Superior Court
By _____ G. Jackson _____
DEPUTY CLERK

9

10        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

11          SOUTHERN BRANCH: HALL OF JUSTICE & RECORDS

12

| | | |
|---|---|---|
| 13  ROCCO R. RADUAZO, | ) | **Case No.:** **CIV 4 7 0 2 0 0** |
| 14 | ) | |
| 15 | ) | **COMPLAINT FOR DAMAGES FOR:** |
| 16         Plaintiff, | ) | 1.    **BREACH OF CONTRACT;** |
| 17 | ) | 2.    **TORTIOUS DISCHARGE IN** |
| 18 | ) | **VIOLATION OF PUBLIC** |
| 19 | ) | **POLICY – AVOIDING** |
| 20         v. | ) | **PAYMENT OF WAGES** |
| | ) | **AND BENEFITS;** |
| 21  EPITOMICS, INC., | ) | 3.    **TORTIOUS DISCHARGE IN** |
| 22  a Delaware Corporation; | ) | **VIOLATION OF PUBLIC** |
| 23  DR. GUO-LIANG YU, | ) | **POLICY – RETALIATION** |
| an individual; and, | ) | **AGAINST INTERNAL** |
| 24  DOES 1 – 20, | ) | **WHISTLEBLOWER;** |
| 25 | ) | 4.    **BREACH OF THE COVENANT** |
| 26 | ) | **OF GOOD FAITH AND FAIR** |
| 27         Defendants. | ) | **DEALING;** |
| 28         \ \ \ | ) | 5.    **UNFAIR BUSINESS** |
| | ) | **PRACTICES;** |

| | | |
|---|---|---|
| 1 | ) | **6.** | **INDUCING CHANGE OF RESIDENCE BY MISREPRESENTING CONDITIONS OF EMPLOYMENT;** |

1  )        6.    **INDUCING CHANGE OF**
2  )              **RESIDENCE BY**
   )              **MISREPRESENTING**
3  )              **CONDITIONS OF**
   )              **EMPLOYMENT;**
4  )
5  )        7.    **FRAUD – INTENTIONAL**
   )              **MISREPRESENTATION OF A**
6  )              **FACT [Civ. Code § 1710(1)];**
   )
7  )        8.    **FRAUD – INTENTIONAL**
   )              **MISREPRESENTATION OF A**
8  )              **FACT [Civ. Code § 1710(2)];**
   )
9  )
10 )        9.    **FRAUD – PROMISE MADE**
   )              **WITHOUT INTENTION TO**
11 )              **PERFORM [Civ. Code § 1710(4)];**
   )
12 )        10.   **FAILURE TO PAY**
   )              **COMMISSIONS**
13 )
   )
14 )        11.   **FAILURE TO PAY WAGES**

15

16  / / /

17  / / /

18  / / /

19  Plaintiff Rocco R. Raduazo alleges:

20

21  **PARTIES**

22

23  1. Epitomics, Inc., (hereinafter Defendant Company), is a Delaware Corporation

24     headquartered in Burlingame, California. Defendant Company is, and at all times

25     mentioned herein was, a corporation organized and existing under the laws of the

26     State of California with its principal place of business in San Mateo County,

27     California.

28

2

2. Dr. Guo-Liang Yu, (hereinafter Defendant Yu), was at all times relevant herein, CEO, President, and Chairman of the Board of Defendant Company. Plaintiff ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will pray leave of this court to amend this complaint to allege the true names and capacities when ascertained.

3. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining Defendants and was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

**Formation of Employment Relationship:**

4. From June 22, 2006 to November 15, 2007, Plaintiff was employed by Defendants as Vice President of Commercial Operations with responsibilities including overseeing Sales, Business Development, Marketing, Licensing, Customer Service, Technical Support, and other duties as required by Defendants. The responsibilities also included overseeing all revenue flows including Research Reagents Revenues, Service Revenues, Milestones and Royalties Revenues.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5. Plaintiff was employed by Defendants for 17 months and consistently received excellent performance evaluations.

**Terms of Employment Contract:**

6. The terms of the Employment Contract (a copy of the Employment Contract is attached hereto and incorporated by this reference as EXHIBIT "A") included, but were not limited to, the following: an annual salary of $175,000; an annual incentive bonus targeted at $80,000, and prorated for partial employment in 2006 – payout to be based on corporate and individual performance targets such as revenues and EBIT; and 160,000 stock options – 25% to vest after one year, $1/48^{th}$ to vest each month after. Pursuant to the Employment Contract, the incentive program was to be jointly developed between Plaintiff and Defendant Yu; and since Plaintiff was eligible for an individual bonus plan, he was not eligible to participate in the Company-wide annual bonus plan.

**Employment Relationship:**

7. Plaintiff at all times fulfilled his duties and conditions under the contract, and received positive feedback both verbally and in emails from internal staff and Defendant Yu for his excellent performance. During Plaintiff's employment, Defendant Company's annual revenues grew from $5 million to $8 million – a sixty percent growth rate. Plaintiff satisfied all corporate and individual performance targets as required by the Employment Contract.

4

8. On or about, August 7, 2006, Defendant Yu sent Plaintiff a document titled, "Discussion on Goals and Objectives with Rocco R. Raduazo" (a copy of the document is attached hereto and incorporated by this reference as EXHIBIT "B") discussing revised revenue goals for fiscal year 2006. In the document Defendant Yu specifies that his original revenue expectations for 2006 were behind because of the "smaller number of service deals in the first half year." In Plaintiff's first quarter working for Defendant Company, Defendant Company's revenues were three times the amount of the same quarter a year before. With the help of Plaintiff, Defendant Company finished the fiscal year 2006 almost satisfying Defendant Yu's original company revenue goals, and surpassed Defendant Yu's revised target goals.

## Plaintiff Begins to Discover Legal & Ethical Violations

9. About August 2006, Plaintiff became aware that Defendant Company was violating the patent rights of competitors in its production of pharmaceuticals. Plaintiff protested this practice to Defendant Yu whose response was, "That Chinese don't honor intellectual property rights."

## Bonus 2006

10. During his first six months of employment with Defendant Company, Plaintiff met all of his individual sales goals.

11. On or about February 16, 2007, Plaintiff was rewarded for his excellent 2006 performance with the following: an annual salary increase of $3,500; a 2006

bonus of $13,125; and an additional grant of 25,000 stock option shares – 25% to vest after one year, $1/48^{th}$ to vest each month after (a copy of the document is attached hereto and incorporated by this reference as EXHIBIT "C").

12. The prorated bonus as specified in the Employment Contract should have been $42,301.37.

## Plaintiff Discovers More Legal & Ethical Violations

13. About April 2007, Plaintiff became aware of Defendants' intentional refusal to honor the promised commissions of its employee contracts with its sales personnel. Plaintiff was also informed of the complaints of a female employee about Defendant Yu's inappropriate behavior and conversation about sex that made the female employee extremely uncomfortable. Defendant Yu ignored Plaintiff's protests about the behavior referred to above.

14. About May 2007, Plaintiff and Defendant Yu traveled to Japan for a business purpose trip. During this trip Plaintiff was shocked to hear Defendant Yu's persistent conversation about female employees and his comparisons of Asian and Western sexual practices. Plaintiff was extremely uncomfortable about Defendant Yu's inappropriate behavior and conversation.

15. About June 2007, Defendants entered into agreements with other companies, parts of which included confidentiality agreements in regards to trade secrets and other proprietary information. Defendant Yu later took actions violating these confidentiality agreements. Defendant Yu ignored Plaintiff's protests about corporate business ethics and contract violations.

6

16. About July and August 2007, Plaintiff again witnessed Defendants' intentional refusal to honor the promised commissions of its employee contracts with its sales personnel. Plaintiff also complained to Defendant Yu about the Company's discriminatory hiring practices and believed that the company would benefit from a greater cultural diversity in the work place. Defendant Yu accused Plaintiff of being "Anti-Chinese" and continued to ignore Plaintiff's protests about Defendants' refusal to honor its employment contracts.

17. About August 2007, Plaintiff learned that Defendants were importing research reagent products intended for retail sale under the guise of "research samples" to evade taxes and customs duties. Defendant Yu ignored Plaintiff's protests about the legal and ethical violations created by such conduct. Plaintiff also raised the issue to the Defendant Company's Vice President of Finance, that such behavior undervalued the company's costs. Plaintiff's protests were once again ignored. Plaintiff continued to complain to Defendant Yu about the company's discriminatory hiring practices and his belief that the company would benefit from greater cultural diversity in the work place, and Defendant Yu again accused Plaintiff of being "Anti-Chinese."

18. About September 2007, Plaintiff continued to protest the illegality of Defendants importation practices in order to evade taxes. Plaintiff also became aware that Defendant Yu and several employees were entering and leaving the United States bearing undeclared research reagents in violation of U.S. Customs law. Defendant Yu ignored Plaintiff's protests about the tax, customs, and health and safety violations of such behavior. Plaintiff also spoke to the Vice President of

7

Finance regarding this habit of entering and leaving the United States with undeclared goods.

19. About October 2007, Plaintiff continued to protest Defendants and Vice President of Finance regarding tax violations and discriminatory hiring practices. Defendant Yu and Vice President of Finance ignored Plaintiff's protests.

## Continued Individual & Company Success

20. Over the course of 2007, Plaintiff and Defendant Company experienced great financial success. Both Plaintiff and Defendant Company surpassed their revenue goals set by Defendant Yu and Plaintiff.

21. Additionally, during 2007, Defendant Yu turned to Plaintiff with interest in selling Defendant Company. Plaintiff advised Defendant Yu on how to restructure Defendant Company into several business units each with their own profits and liabilities, so that Defendant Company assets were more marketable. The restructuring better implemented corporate strategy, helped manage profitability, boosted revenues, and increase the likelihood of offers for the sale of the business.

## Termination of Employment Relationship

22. On or about November 9, 2007, and effective November 15, 2007, Defendants terminated Plaintiff's employment without specifying any cause for termination.

8

23. At an exit interview on November 9, 2007, Defendant Yu informed Plaintiff that "[Plaintiff] was an excellent employee, had a major roll in the success of the organization, and all of his fellow employees loved working with him."

## FIRST CAUSE OF ACTION
## BREACH OF EXPRESS CONTRACT
## (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

24. Plaintiff incorporates herein by reference Paragraphs 1 through 23.

25. Defendants have refused to pay Plaintiff the contractually promised $80,000 bonus for 2007 and the deficient $29,176.37 still owed on the 2006 bonus even though Plaintiff satisfactorily performed his obligations under the contract.

26. Defendants maliciously and avariciously terminated Plaintiff a mere three months prior to the initial vesting of the 25,000 additional stock options granted him for the successes of 2006.

27. Plaintiff refused Defendants offered severance package of $22,312.50 – an amount grossly short of standard industry practice for a senior level executive. The severance package demanded Plaintiff release all claims to any previous bonuses and stock options Defendants owed.

28. As a proximate result of Defendant's breach of the Employment Contract, Plaintiff has suffered and continues to suffer losses in earnings and other employment benefits, to his damage in an amount of $109,176.37 in bonuses, approximately 125,000 stock options, and $44,625 in salary.

## SECOND CAUSE OF ACTION

9

## TORTIOUS TERMINATION IN VIOLATION OF PUBLIC POLICY – AVOIDING PAYMENT OF WAGES & BENEFITS (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

29. Plaintiff incorporates herein by reference Paragraphs 1 through 28.

30. On or about, November 15, 2007, Defendant Company's CEO, President, and Chairman of the Board Defendant Yu, acting within the course and scope of his employment, terminated the employment relationship with Plaintiff.

31. Defendants have refused Plaintiff's demands to the compensation that is due to him under the terms of their employment contract, specifically, the 2006 bonus deficiency, his 2007 bonus, and an industry standard severance package.

32. The fact that Defendant Yu terminated Plaintiff within one month of his 2007 bonus being due and within three months of the vesting date of Plaintiff's additional stock options combined with the fact that Defendant Company and Plaintiff shared tremendous success, is conspicuous and evidence of Defendant Yu's intentional and malicious purposes trying to avoid paying Plaintiff these benefits.

33. While an employee for Defendant Company, Plaintiff witnessed and protested Defendant Yu's similar behavior referred to above, in his dealings with other employees.

34. The actions Defendant Yu engaged in violate California Labor Code §216, making it a misdemeanor for any manager who, having the ability to pay, willfully refuses to pay wages due and payable after demand has been made.

35. As a proximate result of Plaintiff's conduct as described in Paragraphs 30 through 33, above, and in violation of the well established and fundamental public policy

10

as set forth in Paragraph 34, above, Defendant Yu terminated Plaintiff's

employment on November 15, 2007.

36. As a proximate result of Defendant's conduct, Plaintiff has suffered harm,

including lost earnings and other employment benefits, humiliation,

embarrassment, and mental anguish, all to his damage in an amount to be

established at trial.

37. In doing the acts set forth above, Defendants knew that terminating Plaintiff to

avoid paying him wages and benefits was unlawful. Notwithstanding this

knowledge, Defendant despicably terminated Plaintiff in conscious disregard of

Plaintiff's rights to deny him the wages, commissions, and benefits he was

contractually promised and rightfully deserved in return for Plaintiff's satisfactory

performance. Defendant Yu, CEO, President, and Chairman of the Board of

Defendant Company committed this oppressive conduct. Defendants' conduct

warrants the assessment of punitive damages.

### THIRD CAUSE OF ACTION
### TORTIOUS TERMINATION IN VIOLATION OF PUBLIC POLICY –
### RETALIATION AGAINST INTERNAL WHISTLEBLOWER;
### (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

38. Plaintiff incorporates herein by reference Paragraphs 1 through 37.

39. During Plaintiff's 17 months as a senior level executive officer (Vice President of

Commercial Operations) Plaintiff became aware of all business practices of

Defendants. Plaintiff realized potential legal and ethical violations occurring at

Defendant Company and condoned by Defendant Yu, as referred to in Paragraphs

9, and 13 through 21.

11

40. Plaintiff continuously protested these legal and ethical violations at senior staff meetings and in private with Defendant Yu. Defendants' only responses to Plaintiff's protests were to claim Plaintiff was "anti-Chinese" on multiple occasions, and to refer to Plaintiff as "lao wai" which means "foreigner" in Chinese.

41. The actions Defendants engaged, and continues to engage in potentially violate sections of the Internal Revenue Code, provisions of Title 35 of the U.S. Code - Patents, the Fair Employment and Housing Act ("FEHA"), the Uniform Trade Secret Act ("UTSA"), and U.S. Customs Law.

42. Defendant's termination of Plaintiff in retaliation to Plaintiff making oral complaints and protests about the legal and ethical violations of the Defendants' practices violates California Labor Codes §6310 and §1102.5, and California Government Code §12940(h); statutes that protect employees from being retaliated against for raising and protesting illegal activities to management within the workplace.

43. As a proximate result of plaintiff's conduct as described in Paragraphs 9, 13 through 21, 40 and 41, above, and in violation of the fundamental and well established public policies as set forth in Paragraph 42, above, defendant Yu terminated plaintiff's employment on November 15, 2007.

44. As a proximate result of defendant's conduct, plaintiff has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, all to his damage in an amount to be established at trial.

45. In doing the acts set forth above, Defendants knew that terminating Plaintiff for protesting illegal activities was unlawful. Notwithstanding this knowledge, Defendants despicably terminated Plaintiff in conscious disregard of Plaintiff's rights. Defendant Yu, CEO, President, and Chairman of the Board of Defendant Company committed this oppressive conduct. Defendants' conduct warrants the assessment of punitive damages.

## FOURTH CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
## (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

46. Plaintiff incorporates herein by reference Paragraphs 1 through 45.

47. The Employment Contract referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendants to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff from performing any or all of the conditions of the contract that he agreed to perform, or any act that would deprive Plaintiff of the benefits of the contract.

48. Plaintiff was employed by defendant for 17 months, and reasonably relied on the provisions of the Employment Contract regarding the terms of employment, compensation, and that Defendant would apply its policies even-handedly to afford Plaintiff the protections if Defendant believed there was cause to discharge Plaintiff.

49. Plaintiff performed all the duties and conditions of the employment agreement.

50. Defendant knew that Plaintiff had fulfilled all his duties and conditions under the contract.

13

51. Defendant breached the implied covenant of good faith and fair dealing under the Employment Contract by discharging Plaintiff intentionally, maliciously, and without probable cause, in bad faith and for reasons extraneous to the contract. In fact, Defendant discharged Plaintiff to avoid paying Plaintiff wages and benefits, to silence Plaintiff's continuous complaints about the illegalities and unethical behavior committed by the Defendants, and so that Defendant Yu could keep a greater percentage of company ownership for himself. Plaintiff, in good faith and in a reasonable, appropriate, and businesslike manner, had attempted to secure payment of commissions due under the employment agreement. Plaintiff's termination was retaliatory in nature and extraneous to the employment relationship, and was intended to deprive Plaintiff of the benefits thereof.

52. Defendant further breached the implied covenant of good faith and fair dealing by depriving Plaintiff of commissions earned by Plaintiff on sales completed before his termination and due in the form of the contractually promised prorated bonus.

53. As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer, losses in earnings and other employment benefits, to his damage in an amount to be established at trial. As a further proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has incurred reasonable attorney's fees in attempting to secure the benefits owed him under the employment contract.

## FIFTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES §17200
### (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

14

54. Plaintiff incorporates herein by reference and Paragraphs 1 through 53.

55. From before Plaintiff's employment to present, Defendants have consistently and intentionally misrepresented material facts to their employees and have refused to satisfy the promises of wages, benefits, and commissions as promised in employment contracts, even when employees satisfactorily perform. Defendant Company habitually lures sales employees into sacrificing enormous amounts of time and energy with the false promise of large commissions and then terminates them before their commissions are due.

56. Plaintiff is informed and believes and thereon alleges that Defendants performed the above-mentioned acts for the purpose of intentionally and wrongfully injuring Plaintiff and other previous employees.

57. Defendants threaten to and unless restrained, will continue to enter into employment contracts with misrepresentation and intent to dishonor their promises of wages, benefits, and commissions.

58. As a proximate result of the above-mentioned acts of defendants, plaintiff has been deprived of his bonus and stock options, all to his damage in the sum of $109,176.37 and 6,250 stock option shares trebled to the sum of $327,529.11 and 18,750 stock option shares.

**SIXTH CAUSE OF ACTION**
**INDUCING CHANGE OF RESIDENCE BY MISREPRESENTING**
**CONDITIONS OF EMPLOYMENT – LABOR CODE §970**
**(AGAINST DEFENDANT COMPANY AND DEFENDANT YU)**

59. Plaintiff incorporates herein by reference and Paragraphs 1 through 58.

60. On or about June 13, 2006, by means of written communication, Defendant represented to Plaintiff that he would be hired as Vice President of Commercial Operations with lucrative bonus and company ownership benefits if he were to reach individual sales and help the company reach revenue goals.

61. Defendant knew that the representations were false in that he would terminate Plaintiff before rendering the promised benefits referred to in Paragraph 6.

62. In reliance on the representations and in ignorance of the falsity thereof, Plaintiff changed his place of residence by moving without his family from Massachusetts to California for the purpose of working for Defendant as Vice President of Commercial Operations.

63. On or about June 22, 2006, Defendant hired Plaintiff in accordance with the said representations. On or about November 15, 2007, Plaintiff discovered the said representations to be false in that Defendant failed to honor promised bonus and stock option commissions.

64. As a proximate result of the representations, Plaintiff was influenced and persuaded to acquire residence in California for the purpose of working thereby incurring expenses for moving personal belongings and finding adequate housing in San Mateo County, California to Plaintiff's damage in the sum of $10,000.

65. The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in

16

conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
### FRAUD & DECEIT – INTENTIONAL MISREPRESENTATION OF FACT [Civ. Code § 1710(1)]
### (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

66. Plaintiff incorporates herein by reference and Paragraphs 1 through 65.

67. On or about June 13, 2006, Defendants made the following representation to Plaintiff: that Plaintiff would be rewarded according to the terms of the Employment Contract if his individual sales and company revenues met the goals set by Plaintiff and Defendant Yu.

68. The representations made by the Defendants were in fact false. The true facts were that Defendants had no intention of honoring the terms of the Employment Contract, and even though Plaintiff satisfied all individual sales and company revenue goals, Plaintiff would be denied the contractually promised compensation and additional grants of company ownership in the form of stock options.

69. When Defendants made these representations, he knew them to be false and made these representations with the intention to deceive, defraud, and induce Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

70. Plaintiff, at the time these representations were made by Defendants and at all time the Plaintiff took the actions herein alleged, was ignorant of the falsity of the Defendants' representations, Plaintiff was induced to and did fulfill the duties of

17

1
2
3
4
5
6
7
8

the Employment Contract in a satisfactory manner, even though it required him to spend time weeks at a time away from his family, and the lease of a property three thousand miles away from his residence. Had the Plaintiff known the actual facts, he would not have taken such actions. Plaintiff's reliance on Defendants' representations was justified because the representations were written in an Employment Contract and were presented to him in an effort to persuade Plaintiff from accepting employment with Defendants' rival corporations.

9
10
11
12
13
14
15
16
17

71. As a proximate result of the fraudulent conduct of the Defendants as herein alleged, Plaintiff was maliciously and intentionally deprived of the compensation he was promised while he would have been fairly compensated with another employer. Plaintiff was induced to expend 17 months of his time and energy in an attempt to derive a profit for the benefit of Defendant Company but has received less than 70% of the promised compensation for his time and energy, by reason of which Plaintiff has been damaged in an amount to be established at trial.

18
19
20
21
22
23
24
25

72. The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

26
27
28

**EIGHTH CAUSE OF ACTION**

18

**FRAUD & DECEIT – NEGLIGENT MISREPRESENTATION OF FACT [Civ. Code § 1710(2)]**
**(AGAINST DEFENDANT COMPANY AND DEFENDANT YU)**

73. Plaintiff incorporates herein by reference and Paragraphs 1 through 72.

74. When Defendants made these representations referred to above, they had no reasonable ground for believing them to be true in that Defendants had previously and routinely failed to honor similar Employment Contracts promising commissions, and that Defendants have previously fired employees to avoid paying benefits promised before.

75. Defendants made these representations with the intention of inducting Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

76. As a proximate result of the fraudulent conduct of the Defendants as herein alleged, Plaintiff has suffered, and continues to suffer, losses in earnings and other employment benefits, to his damage in an amount to be established at trial.

**NINTH CAUSE OF ACTION**
**FRAUD & DECEIT – PROMISE MADE WITHOUT INTENTION TO PERFORM [Civ. Code § 1710(4)]**
**(AGAINST DEFENDANT COMPANY AND DEFENDANT YU)**

77. Plaintiff incorporates herein by reference and Paragraphs 1 through 76.

78. On or about June 22, 2006 and February 16, 2007, Defendants promised Plaintiff that if he met his individual sales goals and Defendant Company met revenue goals as determined by Plaintiff and Defendant Yu, Plaintiff would be compensate with an annual bonus prorated and targeted at $80,000 and increased company ownership through the granting of additional stock options, for so long as Plaintiff

19

should satisfactorily perform the duties of Vice President of Commercial Operations.

79. At the time Defendant made the promise to Plaintiff, Defendant had no intention of performing it.

80. The promise was made by Defendant with the intent to induce Plaintiff to work countless hours generating profits for Defendants.

81. Plaintiff, at the time this promise was made and at the time Plaintiff took the actions herein alleged, was ignorant of Defendants' secret intention not to perform and justifiably relied on such contractual promises, Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendants' secret intention. In reliance on Defendants' promise, Plaintiff leased a property three thousand miles away from his family and primary residence to devote himself and his efforts to the success of Defendant Company. If Plaintiff had known Defendants' actual intention, Plaintiff would not have taken such action, and would have accepted other offers of employment.

82. Defendants failed to abide by their promise by refusing to pay Plaintiff his contractually promised and deserved wages, commissions, and benefits, and on November 15, 2007, terminated the employment of Plaintiff and refused to allow Plaintiff to perform his duties and to pay him under their agreement. But for the termination of employment, Plaintiff would have continued to perform his duties satisfactorily under the Employment Contract.

83. The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the

Defendants with the intention on the part of the Defendants of thereby depriving

Plaintiff of property or legal rights or otherwise causing injury, and was

despicable conduct that subjected Plaintiff to cruel and unjust hardship in

conscious disregard of Plaintiff's rights, so as to justify an award of exemplary

and punitive damages.

## TENTH CAUSE OF ACTION
## FAILURE TO PAY COMMISSIONS
## (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

84. Plaintiff incorporates herein by reference and Paragraphs 1 through 83.

85. On or about November 2007, Defendant failed and refused, and continues to fail

and refuse, to pay to Plaintiff the commissions that plaintiff had earned and that

were then due, in the amount of $109,176.37.

86. Defendant has not paid Plaintiff the balance of the total sum due under the

contract, to Plaintiff's damage in the sum of $109,176.37.

87. Pursuant to Labor Code Section 218.5, plaintiff requests that the court award

plaintiff reasonable attorney's fees and costs incurred by him in this action.

88. Pursuant to Labor Code Section 218.6, plaintiff requests that the court award

plaintiff interest on all due and unpaid wages, at the legal rate specified by Civil

Code Section 3289(b), accruing from the date the wages were due and payable.

## ELEVENTH CAUSE OF ACTION
## FAILURE TO PAY WAGES
## (AGAINST DEFENDANT COMPANY AND DEFENDANT YU)

89. Plaintiff incorporates herein by reference and Paragraphs 1 through 88.

21

90. On November 15, 2007, at the time that defendant terminated plaintiff's
    employment, plaintiff was owed wages for in the amount of $109,176.37 based on
    the Employment Contract as provided for in the employment agreement referred
    to in Paragraphs 6 and 11.

91. At the time of termination, defendant failed to pay plaintiff any of the amounts
    due, as set forth in Paragraphs 6 and 11. Defendant's failure to pay the full
    amount due plaintiff on termination violates the provisions of Labor Code Section
    216. There is now due and owing to plaintiff the sum of $109,176.37. Defendant
    has failed and refused, and continues to fail and refuse, to pay the amount due.

92. Pursuant to Labor Code Section 218.5, plaintiff requests that the court award
    plaintiff reasonable attorney's fees and costs incurred by him in this action.

93. Pursuant to Labor Code Section 218.6, plaintiff requests that the court award
    plaintiff interest on all due and unpaid wages, at the legal rate specified by Civil
    Code Section 3289(b), accruing from the date the wages were due and payable.

## DAMAGES

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as
follows:

1. **BREACH OF CONTRACT** – $175,000 for compensatory damages according to
   proof, including lost earnings and other employee benefits, costs of seeking other
   employment, and damages for emotional distress, humiliation, and mental
   anguish. Additionally the specific performance of stock option shares granted
   through forward vesting of past and future stock options;

22

2. **TORTIOUS TERMINATION IN VIOLATION AGAINST PUBLIC**

   **POLICY – AVOIDING TO PAY WAGES AND BENEFITS** - $175,000 for

   compensatory damages according to proof, including lost earnings and other

   employee benefits, costs of seeking other employment, and damages for

   emotional distress, humiliation, and mental anguish. $350,000 for punitive

   damages appropriate to punish Defendant and deter others from engaging in

   similar misconduct;

3. **TORTIOUS TERMINATION IN VIOLATION AGAINST PUBLIC**

   **POLICY – RETALIATION AGAINST INTERNAL WHISTLEBLOWER** -

   $44,625 for back pay, $175,000 for front pay, $50,000 for emotional distress,

   $20,000 for attorney fees. $350,000 for punitive damages appropriate to punish

   Defendant and deter others from engaging in similar misconduct;

4. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** -

   $175,000 for compensatory damages according to proof, including lost earnings

   and other employee benefits, costs of seeking other employment, and damages for

   emotional distress, humiliation, and mental anguish. $1,020,000 for Contract

   Damages for compensation, wages, and other benefits that would have been paid

   over the four years specified by the vesting period of stock options as promised in

   the Employment Contract and February 16, 2007 document for the amount of

   time Plaintiff's employment would have continued but for Defendants' breach.

   $20,000 for reasonable attorney's fees incurred by Plaintiff in obtaining the

   benefits due him under the Employment Contract with Defendants;

23

5. **UNFAIR BUSINESS PRACTICES** – A permanent injunction enjoining Defendants from entering into employee contracts in bad faith, from terminating employees without paying commissions and benefits owed, and from retaliating against employees who complain of illegal and ethical violations. $109,176.37 and 6,250 stock option shares for restoration of money and property acquired by Defendants by their unfair business practices;

6. **INDUCING CHANGE OF RESIDENCE BY MISREPRESENTING CONDITIONS OF EMPLOYMENT** - $10,000 for compensatory damages for the costs of moving personal items and acquiring a California residence. $20,000 for double damages as provided for by California Labor Code §972. Punitive damages not to be less than compensatory damages;

7. **FRAUD & DECEIT – INTENTIONAL MISREPRESENTATION OF FACT [Civ. Code § 1710(1)]** - $175,000 for compensatory damages according to proof, including lost earnings and other employee benefits, costs of seeking other employment, and damages for emotional distress, humiliation, and mental anguish. Prejudgment interest to be determined at trial. Punitive damages not to be less than compensatory damages.

8. **FRAUD & DECEIT – NEGLIGENT MISREPRESENTATION OF FACT [Civ. Code § 1710(2)]** - $175,000 for compensatory damages according to proof, including lost earnings and other employee benefits, costs of seeking other employment, and damages for emotional distress, humiliation, and mental anguish. Prejudgment interest to be determined at trial. Punitive damages not to be less than compensatory damages.

24

9. **FRAUD & DECEIT – PROMISE MADE WITHOUT INTENTION TO PERFORM [Civ. Code § 1710(4)]** - $175,000 for compensatory damages according to proof, including lost earnings and other employee benefits, costs of seeking other employment, and damages for emotional distress, humiliation, and mental anguish. Prejudgment interest to be determined at trial. Punitive damages not to be less than compensatory damages.

10. **FAILURE TO PAY COMMISSIONS** - $109,176.37 for commissions owed;

11. **FAILURE TO PAY WAGES** - $109,176.37 for commissions owed;

12. **COSTS** – To be determined at trial for costs of suit incurred by Plaintiff;

13. **INTEREST** – To be determined at trial, for interest on lost earnings and benefits at the prevailing legal rate from February 16, 2007 for the 2006 bonus deficiency, and from November 15, 2007 for all other lost earnings and benefits.

14. **OTHER AND FURTHER RELIEF** – To be determined at trial as the court deems proper.

Dated: __2/14/08__                    By: __/S/_____
                                          Walter Midkiff Crandall IV
                                          CA Bar No. 250976

Attorney for Plaintiff: Rocco R. Raduazo

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

25

\ \ \

## VERIFICATION

I, ROCCO R. RADUAZO, am the plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 02/14/08

ROCCO R. RADUAZO

26

 EPITOMICS, INC.

Mr. Rocco R. Raduazo
25 Weathers Lane
Bolton, MA 01740

June 13, 2006

### RE:    Employment Offer Letter

Dear Rocco:

On behalf of Epitomics, Inc. (the "Company"), I am pleased to offer you the position of Vice President of Commercial Operations reporting to me. In this position, you will be responsible for continuing the strong relationships with existing customers, developing new relationships and maximizing sales opportunities for Epitomics and such other duties as may be agreed with me. Your base salary will be at the rate of $175,000 per year, payable twice per month during the term of your employment, subject to all applicable deductions and withholding payable in accordance with the Company's standard payroll policies.

You will also be eligible for an annual incentive bonus targeted at $80,000, prorated for partial employment in 2006. The payout will be based on corporate and individual performance targets such as revenues and EBIT. The incentive program will be jointly developed before July 31, 2006. Since you will have an individual bonus plan, you will not be eligible to participate in the Company-wide annual bonus plan.

As a regular, full-time employee of Epitomics Inc., you will be provided with the Company's benefit package at a level commensurate with employees in similar positions, beginning July 1, 2006. As an incentive, you will be offered options to purchase 160,000 shares of the Company's common stock, subject to the approval of the Board of Directors and based on the company's incentive stock option plan. Your starting date will be June 21, 2006 with a salary commencement date of July 10, 2006.

Since you will be spending time each month in the Burlingame office of the Company, the Company will reimburse you for the cost of one family round trip air fare per month to a maximum of $400 per trip. In addition, for the first six months of your employment, the Company will reimburse you to a maximum of $5,000 for hotel, car rental and incidentals. Reimbursement for these items will be on the basis of a completed Company Expense Report (in accordance with Epitomics' Travel and Expense Reimbursement policy), supported by relevant receipts.

To assist in the costs of your relocation to the Bay Area, you may reimburse up to $6,000 in costs for relocation expenses, supported by relevant receipts.

This is an at-will employment relationship, and either the Company or you may terminate the relationship for any reason, with or without cause, at any time. The Company may also terminate the relationship, without prior notice, for unsatisfactory job performance, misconduct, or material failure to abide by personnel policies or the terms of this Letter. You also understand that the Company may demote you, with or without cause, or advance notice. This

paragraph is intended to be the complete and exclusive statement regarding the circumstances under which your employment may be terminated. It supersedes any prior agreement or representation. If any term of this paragraph conflicts with any practice or policy of the Company, now or in the future, the terms of this paragraph will control. The terms of this paragraph may not be changed except by written agreement signed by the Company. The terms of your employment are subject to change in the Company's sole discretion.

This offer of employment is contingent upon: (i) you completing, signing, and returning to us, both this offer letter and the Employee Proprietary Information and Inventions Agreement, which is attached to this letter, and (ii) proof of your legal working permit status in the United States.

In addition, by accepting these terms of employment, you represent that you have not brought and will not bring with you to the Company, or utilize in the course of your employment by the Company, any confidential or proprietary information or materials of any prior companies.

Finally, you and we agree that arbitration shall be the exclusive means of resolving any dispute between you and the Company with respect to your employment. Any such dispute would be resolved by a neutral arbitrator, rather than through a lawsuit, with the neutral arbitrator to be selected and the arbitration conducted pursuant to the Employment Dispute Resolution rules of the American Arbitration Association (AAA). This agreement and the terms of your employment shall be governed by and interpreted under the laws of the State of California, without reference to the conflict-of-laws principles thereunder.

We are pleased to welcome you to Epitomics Inc. We believe you will find Epitomics Inc. an exciting and fulfilling place to work. Please signify your acceptance of our offer by signing below and returning this letter to me, no later than June 22, 2006.

Very truly yours,

EPITOMICS, INC.

BY: Guo-Liang Yu, President & CEO

I accept and agree to Epitomics, Inc.'s terms and conditions stipulated in this letter and acknowledge and fully understand that this letter is the entire agreement related to my employment. My acceptance of this employment is completely voluntary and not in reliance on any promises or understandings other than those contained in this letter.

To the best of my knowledge, I have fully disclosed to the Company anything that may prevent me from performing the requirements of the position in a safe and effective manner during my employment.

Accepted:

Date: 06/22/06

Discussion on Goals and Objectives with Rocco R. Raduazo

August 7, 2006

1. Immediate revenue impact



It is too late to catch up service revenues due to smaller number of service deals in the first half year. As the consequence, the revenue is behind and will be behind for the year if no special measures are in place. Possible revenues sources are:

  a. OEM deals to increase reagent sales
  b. Services with shorter cycle times such as antibody production, recombinant cloning of RabMAbs.
  c. New services such as compound profiling using phosphor-specific antibodies.
  d. Push Chiron to conclude the license ($250K) and Ventana to get the milestone payment for FDA PMA filing ($100K).
  e. License deals to sell hybridomas (less preferred as we loss long term value).

Specific action plans and projections are needed to calculate the possibility of bringing new revenues other than the service fees and reagent sales.
The reagent sale has been flat for 3 months. What are the reasons behind it 9more than just speculation)? Is it going to continue? What are the actions to change the situation?

2. Service contracts
Positive trend of service orders will affect the revenue for early next year. Continue growth in services will impact positively on other areas too. A better organization of the service sales, focus on a few large accounts (Merck, Pfizer, Novartis, AZ, Genentech, Amgen) will increase efficiency and long term value.

How to expand existing relationships with large pharmas?
How to get into the games of drug discovery? We have a lot more to offer than just RabMAb service such as target validation, IHC, compound profiling, proteamics and biomarkers. We also have humanization capability.
What will be the service/licensing model if we are in the drug discovery game?
Are we in the "Service" model or like to "co-develop"?
How do we leverage our China capability?
How do we leverage other small companies such as AGI, THP?
Detailed plans and projects needed.

3. Reagent sales

Branding strategy

Push for RabMAbs or Epitomics branded products? With OEM arrangement signed and under consideration, we need to put a strategy together to ensure max return for our investment in marketing

Marketing activities under the strategy
Timeline of key marketing events and costs
    Tradeshows, flyers, catalogs, print ads
    Ways to estimate effectiveness
Email campaigns
Outsourcing and in-house buildup of customer database
Targeted marketing vs. blanket marketing: how do we provide solutions vs tools?
Ways to measure effectiveness (% of total visits to our site or calls; % of total becomes realized sales, etc.)
Field visits
# of labs visited per week
        Service sales vs. product sales
        Ways to measure returns due to the activities in service and product sales
        How much technical support from internal staff other than the sales team needed for close a sale for service or product? How much does this cost?

    4. Market feedbacks and adjustment

    Process and measurement for market feedback and routine adjustments.

 EPITOMICS, INC.

February 16, 2007

PERSONAL AND CONFIDENTIAL

To: Rocco Raduazo

Dear Rocco,

I am pleased to inform you that your salary will be increased to $178,500 effective January 1, 2007 and you have been awarded a bonus of $13,125, subject to normal withholdings. You are also being recommended to the Board of Directors of the Company for a stock option grant to you of 25,000 shares. The exercise price of these options will be determined by the Board of Directors. The options will vest over four years – 25% on the one-year anniversary of the grant and 1/48th per month thereafter.

On behalf of the entire management team, I would like to thank you for your contributions to the company in 2006. Our successes would not have been possible without your individual effort and commitment. The company's management reviewed our performance during 2006 and the overall performance of each member of the team in developing your salary increase, bonus and the recommendation for the stock option grant.

We look forward to an exciting and successful 2007.

Many thanks,

Dr. Guo-Liang Yu
Chief Executive Officer & President

# * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER | DFEH # E-200708-K-0945-01c |
|---|---|
| THE PROVISIONS OF THE CALIFORNIA | DFEH USE ONLY |
| FAIR EMPLOYMENT AND HOUSING ACT | |

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Mr. Rocco R Raduazo | (975) 779-8213 |

ADDRESS
25 Weathers Lane

| CITY/STATE/ZIP Bolton, MA 01740 | COUNTY Worcester | COUNTY CODE |
|---|---|---|

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME Dr. Guo-Liang Yu | TELEPHONE NUMBER (include Area Code) (650) 583-6688 |
|---|---|
| ADDRESS 863 Mitten Road, Suite 103 | DFEH USE ONLY |
| CITY/STATE/ZIP Burlingame, CA 94010-1303 | COUNTY San Mateo | COUNTY CODE |
| NO. OF EMPLOYEES/MEMBERS (if known) 45+ | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) 11/15/07 | RESPONDENT NO. |

THE PARTICULARS ARE:

On 11/15/07 I was
X fired
___ laid off
___ demoted
___ harassed
___ genetic characteristics testing
___ forced to quit

___ denied employment
___ denied promotion
___ denied transfer
___ denied accommodation
___ impermissible non-job-related inquiry
X other (specify) denied promised contractual pay

___ denied family or medical leave
___ denied pregnancy leave
X denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

by Dr. Guo-Liang Yu, CEO, President, Chairman of the Board, Epitomics, Inc.
   Name of Person          Job Title (supervisor/manager/personnel director/etc.)

because of my:
___ sex
___ age
___ religion
X race/color
X national origin/ancestry
___ marital status
___ sexual orientation
___ association
___ physical disability
___ mental disability
___ other (specify)
___ cancer
___ genetic characteristic

X (Circle one) filing;
Protesting participating in investigation (retaliation for)

the reason given by Dr. Guo-Liang Yu, CEO, President, Chairman of the Board
                    Name of Person and Job Title

Was because _____ (Please see attached)
of [please
state what
you believe to
be reason(s)]

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 12/17/07

At Bolton, MA
   City

Rocco R. Raduazo
COMPLAINANT'S SIGNATURE

**RECEIVED**
CA DEPT. OF FAIR EMPLOYMENT & HOUSING

JAN - 7 2008

DATE FILED:  1/7/08

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA
SANTA ANA DISTRICT OFFICE

## Background:

Dr. Guo-Liang Yu gave no reason why he fired me. I believe he fired me illegally out of retaliation, for financial gain, and with discriminatory intent. The majority of Epitomics employees are of Chinese descent. I was the only non-Chinese executive manager at Epitomics.

## Race Discrimination - Disparate Treatment:

When I was fired, I was denied my contractually promised bonuses, and stripped of thousands of contractually promised stock options that were soon to vest. Epitomics and Dr. Guo-Liang Yu have a history of failing to honor employee commissions and employment agreements with non-Chinese employees. It is my belief that Epitomics and Dr. Yu treat employees of Chinese descent more favorably in compensation, terms, conditions, and privileges of employment, and in honoring their employment agreements during terminations. Due to the fact I am not Chinese, Dr. Yu limited my salary increases, withheld my bonuses, and prevented me from my rightfully earned ownership share of the company.

## National Origin Discrimination – Disparate Treatment:

For not being Chinese, I was singled out and treated less favorably than similarly situated employees of Chinese descent on account of national origin. I met all of my individual and company goals. Yet unlike the management employees of Chinese descent who are still employed and reap their contractually promised salaries, bonuses and stock options; my employee contract was not honored, and I was fired.

## Retaliation:

During my 18 months of employment at Epitomics I routinely found myself at odds with Dr. Guo-Liang Yu due to ethical and legal violations. I protested many of these issues at Board meetings and in private discussions with Dr. Yu. I believe I was fired out of retaliation for discussing such FEHA, tax, customs, patent and trade secret violations at board meetings and in private with Dr. Yu. I was fired for internal "Whistleblowing."

## Conclusion:

Besides Epitomics and Dr. Yu's breach of my employment contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of public policy, I have also been a victim of racial and national origin discrimination and retaliation for protesting discrimination, and other illegal conduct.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2101 East 4th Street, Suite 255-B, Santa Ana, CA 92705
(714) 558-4266  TTY (800) 700-2320  Fax (714) 558-6461
www.dfeh.ca.gov



January 7, 2008

ROCCO R. RADUAZO
25 Weathers Lane
Bolton, MA 01740

RE:    E200708K0945-00-rc
       RADUAZO/EPITOMICS, INC.

Dear ROCCO R. RADUAZO:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
January 7, 2008 because an immediate right-to-sue notice was requested.  DFEH
will take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

*Sooky Avila*

Sooky Avila
District Administrator

cc:    Case File

EEO Representative
EPITOMICS, INC.
863 Mitten Road, #103
Burlingame, CA  94010

# NOTICE OF CASE MANAGEMENT CONFERENCE

Roxco Pavaurato

vs.

EP +M.CS

Case No. **CIV4 7 0 2 0 0**

**ENDORSED FILED**
**SAN MATEO COUNTY** Date: ————— JUL 0 1 2008

FEB 1 4 2008  Time: 9:00 a.m.

Clerk of the Superior Court Dept. 3 – on Tuesday & Thursday
By G. Jackson  Dept. 28 – on Wednesday & Friday
DEPUTY CLERK

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within **60 days** of filing the complaint (CRC 201.7).
   b. **Serve** a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. **File and serve** a completed Case Management Statement at least **15 days** before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than **30 days** before the date set for the Case Management Conference.

---

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

---

3. Continuances of case management conferences are highly disfavored unless good cause is shown.
4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed** stipulation to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.
5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.
6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.
7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.
8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO                    FAX NO *(Optional)*

E-MAIL ADDRESS *(Optional)*

ATTORNEY FOR *(Name)*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS    **Superior Court of California**

MAILING ADDRESS    **County of San Mateo**

CITY AND ZIP CODE    **400 County Center**

BRANCH NAME    Redwood City, CA  94063-1655

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(describe, including causes of action)*:

Page 1 of 4

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courtinfo.ca.gov |
|---|---|---|

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

    b. Reservation of rights: ☐ Yes   ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

    ☐ Bankruptcy    ☐ Other *(specify):*

Status:.

**14. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

    ☐ Additional cases are described in Attachment 14a.

    b. ☐ A motion to    ☐ consolidate    ☐ coordinate    will be filed by *(name party):*

**15. Bifurcation**

    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

# Appropriate Dispute Resolution (ADR) Information Sheet
## Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

## What are the Advantages of Using ADR?

◻ *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months.

◻ *Cheaper* – Parties can save on attorneys' fees and litigation costs.

◻ *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

◻ *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

## What are the Disadvantages of Using ADR?

◻ *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

◻ *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

## Are There Different Kinds of ADR?

◻ **Mediation** - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

◻ **Judicial Arbitration** – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

◻ **Binding Arbitration** - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

◻ **Neutral Evaluation** - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

◻ **Settlement Conference** – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date. For questions regarding settlement conferences, call (650) 599-1076.

Appropriate Dispute Resolution Information Sheet
Form adopted for Mandatory Use
Local Court Form ADR-CV-8 [New September, 2007]
[CA Rule of Court §3.221]
www.sanmateocourt.org

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

## What are the Advantages of Using Judicial Arbitration?

- ❏ *Free* - Parties do not have to pay for the arbitrator's fee.

- ❏ *Fast* - Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

- ❏ *Informal* - The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

## What are the Disadvantages of Using Judicial Arbitration?

- ❏ The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

## How Does Judicial Arbitration Work in San Mateo County?

- ❏ During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

- ❏ Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC.  The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

- ❏ Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.
    - o For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

- ❏ After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).

- ❏ If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

- ❏ Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

JS 44 (Rev. 11/04)  **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

ROCCO R. RADUAZO

**DEFENDANTS**

EPITOMICS, INC., a Delaware corporation, DR. GUO-LIANG YU, an individual and DOES

E-filing   **BZ**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
OF LAND INVOLVED.

**ADR**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Walter Crandall
21382 Pinetree Lane
Huntington Beach, CA 92646
(714) 721-5433

Attorneys (If Known)

Jason A. Geller
Long & Levit LLP
465 California Street, Suite 500
San Francisco, CA 94104
(415) 397-2222

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | Seizure of | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product | ☐ 370 Other Fraud | Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| of Veteran's Benefits | Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | ☐ 862 Black Lung (923) | Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle | Property Damage | **LABOR** | ☐ 863 DIWC/DIWW | ☐ 875 Customer Challenge |
| ☐ 195 Contract Product Liability | Product Liability | ☐ 385 Property Damage | ☐ 710 Fair Labor | (405(g)) | 12 USC 3410 |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | Product Liability | Standards Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 441 Voting | ☐ 510 Motion to Vacate | ☐ 730 Labor/Mgmt. | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization |
| ☐ 210 Land Condemnation | ☐ 442 Employment | Sentence | Reporting & | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ | **Habeas Corpus:** | Disclosure Act | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 871 IRS - Third Party | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☒ 790 Other Labor Litigation | 26 USC 7609 | ☐ 895 Freedom of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & | ☐ 791 Empl. Ret. Inc. | | Information Act |
| ☐ 290 All Other Real Property | Employment | Other | Security Act | | ☐ 900 Appeal of Fee |
| | ☐ 446 Amer. w/Disabilities - | ☐ 550 Civil Rights | | | Determination Under |
| | Other | ☐ 555 Prison Condition | | | Equal Access to Justice |
| | ☐ 440 Other Civil Rights | | | | ☐ 950 Constitutionality of |
| | | | | | State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

**VI. CAUSE OF ACTION** Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. Section 1441(b), 28 U.S.C. Section 1331

Brief description of cause: Breach of employment contract, covenant of good faith, etc.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   **DEMAND $** Unknown   CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____   DOCKET NUMBER _____

DATE
March 20, 2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

NDC-JS44